**Peter HURWITZ, Plaintiff–Appellant,**

**v.**

**Joan Lear SHER, Defendant–Appellee.**

**No. 299, Docket 92–7444.**

United States Court of Appeals, Second Circuit.

Argued Oct. 19, 1992.

Decided Dec. 28, 1992.

Neal M. Goldman, New York City (Theodore Ellenoff, Philip S. Raible, Stanley Plesent, Harvey M. Katz, Squadron, Ellenoff, Plesent & Lehrer, of counsel), for plaintiff-appellant.

Charles H. Miller, New York City (Jay Fenster, Michael Josephs, Loeb and Loeb, of counsel), for defendant-appellee.

Before: OAKES, NEWMAN and MAHONEY, Circuit Judges.

OAKES, Circuit Judge:

Plaintiff Peter Hurwitz ("Peter") appeals from a grant of summary judgment in favor of the defendant, Joan Lear Sher. *Hurwitz v. Sher*, 789 F.Supp. 134 (S.D.N.Y. 1992). The district court held that a spouse's antenuptial agreement does not constitute an effective waiver under the Employee Retirement Income Security Act ("ERISA") of death benefits under an employee benefit plan. Peter argues that he is his deceased father's sole beneficiary under the Algonquin Press, Inc. Employees Profit Sharing Plan (the "Plan") and that Sher effectively waived any claims to spousal benefits through the antenuptial agreement (the "Agreement"). We affirm.

## I. Background

The deceased, David Hurwitz ("David"), was an attorney and chief executive officer of Algonquin Press, Inc. At the time of his death, David was the sole participant in the Plan, a qualified profit sharing plan subject to the provisions of ERISA and the qualified plan rules of the Internal Revenue Code ("IRC"). In compliance with section 205 of ERISA, 29 U.S.C. § 1055 (1988 & Supp. II 1990), and IRC § 417(a) (1988)[1], the Plan provides that the beneficiary of death benefits shall be the participant's spouse. For a spousal waiver of these rights to be effective, the spouse must execute a signed document which acknowledges the effect of the waiver and is wit-

nessed by a notary public or a plan representative.

Before his marriage to Sher, David had been married twice. In 1988, he had his second wife execute a waiver of benefits which complied with the conditions stated in the Plan and required under ERISA. Peter, David's son by his first wife, was designated as the beneficiary. David married the defendant, Sher, in 1990.

Before marrying David, Sher signed the Agreement, foregoing any rights to her future husband's property upon his death. The Agreement provided, in part, that "each party hereby waives and releases to the other party and to the other party's heirs, executors, administrators and assigns any and all rights and causes of action which may arise by reason of the marriage between the parties ... with respect to any property, real or personal, tangible or intangible ... now owned or hereafter acquired by the other party, as fully as though the parties had never married...."

Nine months after marrying Sher, David died. Peter is David's sole heir in light of the antenuptial agreement and David's will.

On May 15, 1991, Peter commenced this action against Sher in Supreme Court, New York County, seeking a declaration that he is the sole recipient of Plan benefits. On May 23, 1991, Sher removed the action to the Southern District of New York, pursuant to 28 U.S.C. § 1441(a) (1988), as federal statutes govern the disposition of this case. On June 4, 1991, Sher filed a counterclaim seeking a declaration pursuant to 28 U.S.C. § 2201 (1988) that (1) under the applicable provisions of ERISA, the Internal Revenue Code, the Treasury Regulations and the Plan, she, as the spouse of the deceased, is the rightful beneficiary of the Plan; and (2) that the provisions contained in the Agreement constitute neither a valid nor an effective waiver of her rights as a beneficia-

---

1. This section of the IRC parallels the ERISA language in establishing the requirements for benefit plans to qualify for tax exempt status. Authority to issue regulations concerning the parallel provisions has been lodged in the Secretary of the Treasury. *See* Reorg.Plan No. 4 of 1978 § 101, 3 C.F.R. 332 (1978), *reprinted in* 1978 U.S.C.C.A.N. 9814 (transferring authority with regard to certain ERISA provisions from Secretary of Labor to Secretary of Treasury). The IRS's interpretations of the statute are embodied in Treasury Regulations.

ry of the Plan. Both parties moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. The district court granted Sher's motion. For the reasons set forth below, we affirm.

## II. Discussion

▇▇▇▇ Summary judgment is appropriate if, in light of the evidence presented, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). In making this determination, we must view the facts in the most favorable light for the nonmoving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 993, 8 L.Ed.2d 176 (1962). Here, the parties agree that no material facts are in dispute. The only source of dispute is the parties' disagreement over the effectiveness of the antenuptial agreement as a waiver of spousal benefits under the Plan.

▇▇▇▇ As a preliminary matter, Peter argues that New York law should provide guidance as to the outcome of this case. It does not. ERISA's preemption provision is very broad: ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title." 29 U.S.C. § 1144(a) (1988). Under this provision, pension plan regulation is made an exclusively federal concern. *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 44–46, 107 S.Ct. 1549, 1551–52, 95 L.Ed.2d 39 (1987). Peter argues that ERISA is silent on the effectiveness of antenuptial agreements as spousal waivers, justifying an application of state law.[2] *See Amato v. Western Union Intl., Inc.*, 773 F.2d 1402, 1419 (2d Cir.1985), *cert. dismissed*, 474 U.S. 1113, 106 S.Ct. 1167, 89 L.Ed.2d 288 (1986) (although ERISA is governed by federal law, when ERISA is silent, courts may look to state law). This argument is without merit. Although ERISA does not speak specifically to the issue of antenuptial agreements, it does set out quite plainly the requirements for an effective spousal waiver of benefits. 29 U.S.C. § 1055.

▇▇▇▇ In order to determine which party is entitled to receive benefits under the Plan, we must first consider the statutory lan-

---

2. According to Peter, the district court also overlooked a provision of ERISA which would support his argument. ERISA provides a limited exception to the general prohibition on alienation of benefits for "qualified domestic relations orders" ("QDROs"). *See* 29 U.S.C. § 1144(b)(7) (1988). This provision ensures *that such family obligations as alimony or child* support will be payable out of benefits. Plaintiff argues that this exception applies because the decree of the New York Surrogate's Court, which granted him letters of administration to administer his father's estate, is in fact a QDRO. Section 206(d)(3) of ERISA defines a QDRO, in pertinent part, as follows:
(B) For purposes of this paragraph—
. . . .
(ii) the term "domestic relations order" means any judgment, decree, or order (including approval of a property settlement agreement) which—
(I) relates to the provision of child support, alimony payments, or marital property rights to a spouse, former spouse, child, or other dependent of a participant, and
(II) is made pursuant to a State domestic relations law (including a community property law).

(C) A domestic relations order meets the requirements of this subparagraph only if such order clearly specifies—
(i) the name and last known mailing address . . . of the participant and . . . each alternate payee . . . ,
(ii) the amount or percentage of the participant's benefits to be paid by the plan to each such alternate payee, or the manner in which such amount or percentage is to be determined,
(iii) the number of payments or period to which such order applies, and
(iv) each plan to which such order applies.
29 U.S.C. § 1056(d)(3) (1988 & Supp. II 1990). The decree of the Surrogate's court in this case *does not meet the statutory requirements for a* QDRO under paragraph (C) nor does it relate to the fundamental purposes of this provision—to *protect a spouse or former spouse's rights to* child support, alimony payments or marital property. The decree merely deals with the *administration of the decedent's estate.* Consequently, Peter's argument fails.

guage of ERISA. *Pilot Life Ins. Co.*, 481 U.S. at 57, 107 S.Ct. at 1558. ERISA was amended in 1984 by the Retirement Equity Act (the "REA") to ensure that a participant's spouse receives survivor benefits from a retirement plan even if the participant dies before reaching retirement age. Pub.L. 98–397, 98 Stat. 1426 (1984). The REA established clear criteria for a waiver of benefits by the spouse:

> (2) Each plan shall provide that an election [of a waiver] ... shall not take effect unless—
>
> (A)(i) the spouse of the participant consents in writing to such election, (ii) such election designates a beneficiary (or form of benefits) which may not be changed without spousal consent (or the consent of the spouse expressly permits designations by the participant without any requirement of further consent by the spouse), and (iii) the spouse's consent acknowledges the effect of such election and is witnessed by a plan representative or a notary public.

29 U.S.C. § 1055(c) (1988). IRC § 417(a) (1988) states the same requirements.

The Agreement did not satisfy these unambiguous statutory specifications. As the district court noted, the antenuptial agreement did not designate a beneficiary and did not acknowledge the effect of the waiver as required by ERISA. *Hurwitz*, 789 F.Supp. at 137. The district court also relied on the fact that Sher had not been a spouse when she signed the agreement.[3] *Id.*

We do not find the district court's construction to be erroneous. The unambiguous statutory language controls except in those "rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982). Peter argues that the district court's reading of the statute is indeed "demonstrably at odds" with the legislative intent. Specifically, he notes that Congress evinced a concern with protecting the interests of nonparticipant spouses who had no retirement benefits of their own but who had contributed in a nonfinancial way to the family unit. Further, Peter argues that the legislative history betrays no intent to disinherit the children of previous marriages. Thus, he asserts, the REA must be construed to allow waivers through antenuptial agreements.

This argument, however, must fail. The Congressional sponsors of this provision did indeed intend to protect long-term homemakers' rights to their spouses' retirement benefits. *See* S.Rep. No. 98–575, 98th Cong., 2d Sess. 1 (1984), *reprinted in* 1984 U.S.C.C.A.N. 2547, 2547 (REA designed to provide for greater equity in pension plans for workers and spouses "by taking into account changes in work patterns, the status of marriage as an economic partnership, and the substantial contribution to that partnership of spouses who work both in and outside the home...."") Furthermore, it is likely that the Congressional sponsors did not anticipate the situation at issue here, in which two older, wealthy individuals relied on an antenuptial agreement to protect their children's inheritances. However, we cannot say that just because Congress intended to protect spouses who have been longterm partners, it meant to permit the casual disenfranchisement of newly-weds. As no legislative intent can be discerned to exclude such spouses from the clear provisions of the statute, we will not exempt them by fiat.

Moreover, the alternative interpretation suggested by Peter would entail great practical difficulties which cast doubt on his claim that it is what Congress intended. His argument if accepted would require the courts to examine the individual circumstances behind each assertion of spousal waiver to assess whether the parties fit the Congressional model. Perhaps, in this case, the outcome is inequitable if it defeats David's alleged intent to preserve all his assets for his son and does not serve the Congressional purpose of protecting a long-term spouse from being divested of

---

**3.** We reserve judgment on whether the antenuptial agreement might have operated as an effective waiver if its only deficiency were that it had been entered into before marriage.

benefits. In other cases, however, an antenuptial agreement might be signed at the beginning of a long marriage partnership. In these cases, making such an agreement effective as a waiver under ERISA would cause the same problems that the Congressional sponsors were trying to alleviate. As one court has said in a similar case,

> It may seem inequitable that Mr. Jensen should be deemed the beneficiary if Mrs. Jensen's actual intent was that the benefits go to her daughter. The Retirement Equity Act says what it says, however, and so does the plan document. We must follow their provisions. It is neither unlawful nor unreasonable for the terms of a benefit plan to specify that the intent of a plan participant with respect to the designation of a beneficiary must be manifested in a writing that meets the requirements of the statute and that has been filed with the plan trustee. Such a requirement represents a simple and effective safeguard against fraud, and it reduces the likelihood that the plan trustee or administrators will have to make costly—and perhaps inconclusive—inquiries into the subjective state of mind of deceased plan participants.

*Howard v. Branham & Baker Coal Co.*, 968 F.2d 1214 (table), No. 91–5913, reported in full at 1992 WL 154571, at *4, 1992 U.S.App. LEXIS 16247, at *10–11 (6th Cir. July 6, 1992) (unpublished).

Treasury Regulations § 1.401(a)–20 (1991) further support the district court's decision. "Because the IRS is one of the agencies charged with administering ERISA, its interpretations of the statute are entitled to great deference." *Rose v. Long Island R.R. Pension Plan*, 828 F.2d 910, 918 (2d Cir.1987), *cert. denied*, 485 U.S. 936, 108 S.Ct. 1112, 99 L.Ed.2d 273 (1988). Thus, the regulations " 'must be sustained unless unreasonable and plainly inconsistent with the revenue statutes,' and 'should not be overruled except for weighty reasons.' " *Bingler v. Johnson*, 394 U.S.

741, 750, 89 S.Ct. 1439, 1445, 22 L.Ed.2d 695 (1969) (quoting *Comm'r v. South Texas Lumber Co.*, 333 U.S. 496, 501, 68 S.Ct. 695, 699, 92 L.Ed. 831 (1948)).

The Treasury Regulations specifically address antenuptial agreements:

Q–28 Does consent contained in an antenuptial agreement or similar contract entered into prior to marriage satisfy the consent requirements of sections 401(a)(11) and 417 [of The Internal Revenue Code]?

A–28 No. An agreement entered into prior to marriage does not satisfy the applicable consent requirements, even if the agreement is executed within the applicable election period.

. . . .

Q–32 What rules govern a participant's waiver of the spousal benefit of section 401(a)(11)(B) [of The Internal Revenue Code]?

A–32 (a) *Application.* In the case of a defined contribution plan ... a participant may waive the spousal benefit of section 401(a)(11)(B)(iii) if the conditions of paragraph (b) are satisfied....

(b) *Conditions.* ... [T]he participant's waiver of the spousal benefit must state the specific nonspouse beneficiary who will receive such benefit. The waiver is not required to specify the optional form of benefit. The participant may change the optional form of benefit, but not the nonspouse beneficiary, without obtaining the spouse's consent.

Treas.Reg. § 1.401(a)–20 (1991).[4]

We are not alone in finding that antenuptial agreements lacking ERISA waiver requirements do not constitute effective waivers under ERISA. *See Howard v. Branham & Baker Coal Co.*, 1992 WL 154571 at *2–3, 1992 U.S.App. LEXIS 16247 at *6–7 (antenuptial agreement does not constitute valid consent under ERISA); *Zinn v. Donaldson Co., Inc.*, 799 F.Supp. 69, 73 (D.Minn.1992) (same); *Nellis v. Boe-*

---

**4.** Some of the Treasury Regulations are written in question and answer form. This novel format does not alter their weight as regulations. *See, e.g., Branch v. G. Bernd Co.*, 955 F.2d 1574,

1581 & n. 6 (11th Cir.1992); *Communications Workers of America v. NYNEX Corp.*, 898 F.2d 887, 889 (2d Cir.1990).

*ing Co.,* 15 Employee Benefits Cas. (BNA) 1651, 1992 WL 122773 at *3–4, 1992 U.S.Dist. LEXIS 8510 at *12–13 (D.Kan. 1992), (same).

Peter has found only one case which has reached the opposite conclusion. In *In re Estate of Hopkins,* 214 Ill.App.3d 427, 158 Ill.Dec. 436, 574 N.E.2d 230, *appeal denied,* 141 Ill.2d 542, 162 Ill.Dec. 489, 580 N.E.2d 115 (1991), a state appeals court held that an antenuptial agreement operates as an effective waiver of spousal benefits under ERISA. The district court in this case properly distinguished *Hopkins,* noting that the Illinois court had erroneously relied on *Fox Valley & Vicinity Constr. Workers Pension Fund v. Brown,* 897 F.2d 275 (7th Cir.), *cert. denied,* — U.S. ——, 111 S.Ct. 67, 112 L.Ed.2d 41 (1990). The *Hopkins* court read *Fox Valley* to hold that "a surviving spouse can waive her interests in a plan under the REA without following [the] specific waiver requirements [of ERISA as amended in 1984]." *Hopkins,* 574 N.E.2d at 235. *Fox Valley,* however, addressed the question of whether a *divorced* spouse who was designated as a beneficiary prior to divorce may still receive death benefits despite a waiver provision in a divorce settlement. *Fox Valley,* 897 F.2d at 278. A divorced spouse, unlike a current spouse, is not protected by the explicit terms of the statute. The Seventh Circuit held therefore that a divorced spouse may waive benefits without following the explicit requirements of the statute. The *Hopkins* court erred by applying the same logic to current spouses. In reaching its decision, the Illinois court failed to consider the explicit requirements of ERISA with respect to spousal waivers. Moreover, the court in *Hopkins* disregarded the Treasury Regulations as merely "interpretive" and not binding. As noted above, these Regulations must be accorded some deference and may not be dismissed outright. *See Bingler v. Johnson,* 394 U.S. 741, 749–50, 89 S.Ct. 1439, 1444–45, 22 L.Ed.2d 695 (1969).

Peter makes one further argument, this time in equity. In light of David's alleged intent to divest Sher of pension benefits, he argues that Sher should be forced to conform to the terms of the antenuptial agreement. This contention, however, is merely an attempt to evade the clear statutory requirements. *Cf. Zinn,* 799 F.Supp. at 74 (rejecting same argument). *See also Callahan v. Hutsell, Callahan & Buchino, P.S.C., Revised Profit Sharing Plan,* No. C91–0616–L(J), slip op. at 9, 1992 WL 437511 (W.D.Ky. Feb. 18, 1992) (refusing to order beneficiary to sign a waiver after her spouse's death despite the fact that she had previously agreed in an antenuptial agreement to sign such a waiver). We feel it would be inappropriate to plumb the decedent's ambiguous intentions when the statutory requirements are so clear.

### III. Conclusion

The Agreement in this case did not conform to the specific requirements set forth in section 205 of ERISA, 29 U.S.C. § 1055. For this reason, we affirm the decision of the district court.