### In re IVAN F. BOESKY SECURITIES LITIGATION.

**Mark L. GLOSSER, Trustee for Pennsylvania Engineering Corp., Plaintiff,**

v.

**Victor POSNER, Defendant.**

MDL Docket No. 732.

No. 89 Civ. 3789 (MP).

United States District Court, S.D. New York.

March 31, 1994.

As Amended April 6, 1994.

---

David Berger, Stanley B. Siegel, Berger & Montague, Philadelphia, PA, for plaintiff Mark L. Glosser.

Jean Reed Haynes, Terrence J. Galligan, Kirkland & Ellis, New York City, for defendant Victor Posner.

## OPINION

MILTON POLLACK, Senior District Judge:

Plaintiff, trustee for Pennsylvania Engineering Corporation ("PEC"), a now-bankrupt corporation formerly controlled by defendant Victor Posner ("Posner"), moves for summary judgment of liability of Posner by reason of collateral estoppel arising from the judgment rendered by this Court in *S.E.C. v. Drexel Burnham Lambert*, 837 F.Supp. 587 (S.D.N.Y.1993) (hereinafter *Drexel*), aff'd 16 F.3d. 520 (2d Cir.1994).

The claims herein are grounded on (1) violation of Section 10(b) of the Securities Exchange Act of 1934 and the Rules promulgated thereunder; (2) aiding and abetting violation of said statute and rules; (3) violation of RICO (Racketeer Influenced and Corrupt Organizations Act); and (4) breach of

fiduciary duties as an officer and director of PEC. To simplify the motion, the Counts pertaining to the alleged aiding and abetting and RICO will be severed from this motion and treated separately at a later date.

## Background

This case derives from the egregious securities frauds committed by defendant Victor Posner in the 1980s, in conspiracy with defendants Michael Milken ("Milken"), Ivan Boesky ("Boesky") and Drexel Burnham Lambert Inc. ("DBL"), in connection with the takeover of Fischbach Corporation. Litigation involving one aspect or another of said frauds has been before this Court for the past six years, during the course of which this Court has become quite familiar with the fraudulent transactions at issue here.

This particular action was commenced on July 14, 1987 in the United States District Court for the District of Delaware, as a derivative action by PEC shareholders against former PEC chairman and director Posner and against various other defendants including Milken, Boesky and DBL (all of whom have now settled).[1] Plaintiff now asserts claims against the sole remaining defendant Posner for violating the federal securities laws, RICO, and the common law. The factual background underlying plaintiff's allegations is complex and is recounted at length in this Court's decision in *Drexel*, 837 F.Supp. at 588–606, and in the decision of the District Court for the District of Delaware, *Rubin v. Posner*, 701 F.Supp. 1041 (D.Del. 1988), denying defendant's motion to dismiss the instant case. In short, plaintiff alleges that by means of his fraudulent conduct, defendant caused PEC to enter into securities transactions involving Fischbach stock in which it would inevitably, and did in fact, sustain losses.

In June 1989, this case was transferred by the Judicial Panel for Multidistrict Litigation to this Court for consolidated and coordinated pretrial proceedings. Pending at that time in this Court as part of the same Multi-

---

1. Upon application of the original plaintiffs who had brought the derivative action, and pursuant to an Order of the Court dated May 7, 1993, Mark L. Glosser, trustee of the Pennsylvania Engineering Corporation (which had then filed for bankruptcy) was substituted as plaintiff. The action thus ceased to be a derivative action. The change has no bearing on the resolution of this motion.

district Litigation was the Securities and Exchange Commission's (SEC's) civil suit against the same defendants asserting the transgressions of federal securities laws of Victor Posner.

The SEC reached settlements with all defendants except Posner. Consent judgments were entered against the settling defendants, enjoining them from future violations of federal securities laws, and specifically requiring defendants Drexel and Milken to disgorge the sums of $350 and $400 million respectively. The SEC's suit against Posner proceeded to trial in June 1993. On December 1, 1993, this Court issued a decision, with detailed findings of fact establishing *inter alia:* that Posner had entered into a secret agreement with Milken, Boesky and Drexel; that Boesky agreed secretly to acquire and hold stock for Posner in a publicly traded corporation (Fischbach) which Posner was seeking to take over; that Posner and Milken agreed to make good any losses incurred by Boesky; that PEC, at Posner's behest, purchased the bloc of Fischbach stock from Boesky at a considerable premium to make up substantial losses incurred by Boesky in purchasing and parking the stock; and that all these many subterfuges and failures to comply with public reporting requirements to conceal the transactions were undertaken in wilful violation of the federal securities laws. The Court held that Posner had violated Sections 10(b) and 13(d) of the Securities Exchange Act, 15 U.S.C. §§ 78j(b), 78m(d), and had aided and abetted violations of the record-keeping requirements of Section 17(a)(1), 15 U.S.C. § 78q(a)(1), and the margin and credit requirements of Section 7 of the Exchange Act, 15 U.S.C. § 78g. The Court enjoined Posner from future violations of the securities laws, ordered that he disgorge all compensation paid to him for his "services" as officer and director of Fischbach, and barred Posner from ever again serving as an officer or a director of a public company. This decision was affirmed in full by the Second Circuit Court of Appeals by opinion dated February 24, 1994.

### Discussion

To grant the summary judgment sought by the moving party plaintiff, he is required to demonstrate that no genuine issue of material fact exists as to any element of liability on his claim that Posner violated Section 10(b) of the Exchange Act and Rule 10b–5 promulgated thereunder, and on his claim of breach of fiduciary duty as a corporate officer and director of PEC. *See* Fed.R.Civ.P. 56; *Hurwitz v. Sher*, 982 F.2d 778, 780 (2d Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 2345, 124 L.Ed.2d 255 (1993). Upon satisfaction of that burden, the defendant is bound to "go beyond the pleadings and by [his] own affidavits or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Plaintiff contends that the facts established in *Drexel* amply establish Posner's liability herein, that the doctrine of collateral estoppel precludes Posner from relitigating the issues decided in *Drexel*, and that Posner has failed to show that there remains any genuine issue of material fact on the question of his liability on the claims asserted. The doctrine of collateral estoppel applies to the instant action and all the findings required to establish liability on plaintiff's two claims were established in *Drexel.*

### A. The Doctrine of Offensive Collateral Estoppel Applies to this Action

■ The doctrine of collateral estoppel prevents previously litigated issues from being relitigated. *Beck v. Levering*, 947 F.2d 639, 642 (2d Cir.1991) (per curiam), *cert. denied*, —— U.S. ——, 112 S.Ct. 1937, 118 L.Ed.2d 544 (1992). The Supreme Court has explained that the doctrine has a dual purpose: (i) to protect litigants from the burden of relitigating an identical issue with the same party or his privy; and (ii) to promote judicial economy by preventing needless litigation. *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326, 99 S.Ct. 645, 649, 58 L.Ed.2d 552 (1979).

■ Until relatively recently, the use of collateral estoppel was limited by the requirement of "mutuality," whereby neither party could use a prior judgment as an estoppel against the other unless both parties

were bound by the prior judgment. *See Parklane Hosiery*, 439 U.S. at 326, 99 S.Ct. at 649 (describing end of mutuality limitation); 10 Louis Loss & Joel Seligman, *Securities Regulation* 4757 (3d ed. 1993) (recounting how "the mutuality dam burst"). Moreover, even after the mutuality requirement was abolished, a distinction was made between *defensive* and *offensive* use of collateral estoppel. Defensive use of collateral estoppel precludes a plaintiff, who has lost in a prior action, from relitigating issues by merely naming a new adversary. Offensive use of collateral estoppel permits a plaintiff, who was not party to the prior action, to estop a defendant from relitigating issues which the defendant litigated and lost in the prior action. Defensive use of collateral estoppel was generally perceived to promote judicial economy by encouraging plaintiffs to join in the prior action; by contrast, offensive use of collateral estoppel was faulted for furnishing the opposite incentive to potential plaintiffs—to wait and see how the prior litigation turns out, and then either rely on a favorable ruling or relitigate if the ruling was unfavorable. Offensive collateral estoppel was also faulted for potentially being unfair to a defendant who could be forever bound by a judgment against him, even if he could not foresee future suits and thus had little incentive to litigate vigorously.

Notwithstanding these criticisms of offensive collateral estoppel, the Supreme Court concluded in *Parklane Hosiery*, a case with facts very similar to those of the instant case, that trial courts should be granted broad discretion to determine when offensive collateral estoppel should be applied. In *Parklane Hosiery*, plaintiffs stockholders of a public company brought suit against the company and its officers and directors and the company alleging securities violations stemming from misleading proxy statements issued by the company in connection with a merger. Prior to the stockholder suit, the SEC had sought and won injunctive relief against defendants based on the same securities violations. As in the instant case, plaintiffs sought summary judgment on private claims, asserting that defendants were collaterally estopped from relitigating issues that had

been resolved against them in the SEC action. The Supreme Court held:

> [T]he preferable approach for dealing with these problems in the federal courts is not to preclude the use of offensive collateral estoppel, but to grant trial courts broad discretion to determine when it should be applied. The general rule should be that in cases where a plaintiff could easily have joined in the earlier action or where, either for the reasons discussed above or for other reasons, the application of offensive collateral estoppel would be unfair to a defendant, a trial judge should not allow the use of offensive collateral estoppel.

*Parklane Hosiery*, 439 U.S. at 331, 99 S.Ct. at 651. The Supreme Court concluded that none of the circumstances were present in the *Parklane Hosiery* case which might justify reluctance to allow offensive use of collateral estoppel: both precedent and statute suggested that the stockholders could not have joined the prior SEC action even if they had sought to; applying offensive collateral estoppel was not unfair because defendants had every incentive to fully litigate the prior action, the SEC judgment was not inconsistent with any previous decision, and there were no novel procedural opportunities available in the second action that were unavailable in the first; and defendants received a "full and fair" opportunity to litigate their claims in the SEC action.

■ Defendant contends that this Court should decline to apply offensive collateral estoppel in this case for two reasons: (i) because it is fundamentally unfair to rely on the Court's findings in the SEC action since such findings were made without the benefit of Posner's testimony (Posner was barred from testifying at trial having claimed his Fifth Amendment privilege against being deposed before trial, *see Drexel*, 837 F.Supp. at 589); and (ii) because no judicial economies will be realized by applying the doctrine of collateral estoppel.

Defendant's contentions are unavailing. Substantial evidence existed to support this Court's findings of fact in *Drexel*, notwithstanding the absence of Posner's testimony. *See SEC v. Posner*, 16 F.3d at 520 (affirming this Court's ruling in *Drexel* and holding that

"the evidence was more than sufficient to support the district court's finding that ... Posner[ ] violated the securities laws."). Moreover, Posner offers no persuasive authority for the proposition that collateral estoppel may not be utilized where a specific piece of evidence in the prior action was not adduced. This Court declines to expound such a proposition here. Posner's second contention—that no judicial economies stand to be realized in this case—is simply irrelevant. In *Parklane Hosiery*, the Supreme Court noted that considerations of judicial economy justify the doctrine of collateral estoppel in general. However, contrary to Posner's contentions, the Court never suggested that the "quantity" of judicial resources to be saved should influence, let alone determine, whether to apply collateral estoppel offensively.

In light of the criteria that the Supreme Court did advance in *Parklane Hosiery*, this Court concludes that the doctrine of collateral estoppel may be used offensively to preclude defendant in the instant case from relitigating issues previously litigated and resolved in *Drexel*. Plaintiff in the instant case is clearly not a "fence-sitter" who deliberately avoided joining the SEC action. Nor is the application of collateral estoppel in the instant case unfair; the defendant had every incentive to, and did in fact, vigorously litigate every issue relating to his liability in the SEC suit, and the existence of the instant suit was known to defendant from the outset. Finally, defendant had a full and fair opportunity to litigate the claims in the SEC action; and, the Second Circuit found on appeal that "Posner[ ] received a fair trial." *SEC v. Posner*, 16 F.3d at 520. Plaintiff may thus utilize collateral estoppel to preclude relitigation of the same matters necessarily litigated and resolved in the *Drexel* suit. *See Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38, 44 (2d Cir.1986).[2]

## B. Section 10(b) and Rule 10b–5 violations

■ A plaintiff must establish five elements to prevail in a private suit alleging 10b–5 violations: (1) fraud in connection with the purchase or sale of a security; (2) the materiality of the alleged misrepresentations or omissions; (3) scienter; (4) reliance; and (5) loss causation. *Citibank v. K–H Corp.*, 968 F.2d 1489, 1494 (2d Cir.1992). The first three elements pose issues identical to those in the SEC suit; they were actually litigated in that suit; and they were necessary to the SEC's judgment therein against Posner. *See Drexel*, 837 F.Supp. at 609 (Posner's "arrangement with Boesky ... constituted a blatant scheme to defraud in violation of Section 10(b) and Rule 10b–5."). Relitigation of these three key elements is clearly precluded by the doctrine of collateral estoppel.

■ The only question raised by Posner hereon with respect to plaintiff's 10b–5 claim is whether the factual findings underlying the fourth and fifth elements—reliance and causation—were necessarily litigated and determined in *Drexel*. To establish reliance, the plaintiff must show that defendant's violations actually caused PEC to engage in the transaction at issue. *Citibank*, 968 F.2d at 1495. Reliance is established by a rebuttable presumption which exists in cases, such as the instant one, in which defendant has failed to disclose material information to PEC (rather than making affirmative *mis* representations). Loss causation is established by the showing that the securities violations actually caused the losses that PEC suffered. *Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb, Inc.*, 967 F.2d 742, 747 (2d Cir.1992). Defendant contends that findings of reliance and the actual losses caused to PEC were not necessary and essential to the judgment in the SEC's favor. Analysis of the findings establishes otherwise.

2. *Gelb* established a four-part test to determine if the doctrine of collateral estoppel applies:
 (1) the issues in both proceedings must be identical, (2) the issue in the prior proceedings must have been actually litigated and actually decided, (3) there must have been full and fair opportunity for the litigation in the prior proceeding, and (4) the issue previously litigated must have been necessary to support a valid and final judgment on the merits.
 As discussed above, the third part of this test— "full and fair opportunity"—is clearly established by the Second Circuit's affirmance of *Drexel*.

In *Drexel,* the Court found that Posner's violations of Rule 10b–5 were manifold, and stemmed in part from his failure to file disclosures under Section 13(d) of the Exchange Act of his total beneficial ownership in Fischbach, and in part from his comprehensive scheme to defraud, in conspiracy with Boesky, Milken and Drexel. The Court found that in the course of this fraud, Posner caused PEC to purchase Fischbach securities at an inflated price, to incur a substantial debt to pay for the purchase, to incur $3 million in investment banking fees, and to bear the risk of the decline in the market price for Fischbach.[3] These findings of integral aspects of Posner's scheme, essential to the coherence of the SEC's argument in *Drexel* and to the Court's judgment in that case, are simply irreconcilable with Posner's argument that had he disclosed his extensive control of Fischbach and his illegal parking scheme, PEC would nonetheless have purchased Fischbach securities at the inflated price, thereby incurring substantial debt.

The Supreme Court has held that a rebuttable presumption of reliance exists when the 10b–5 violation in question is one of nondisclosure or omission, rather than one of affirmative misrepresentation and the need for proof of actual reliance is obviated. *See Affiliated Ute Citizens v. United States,* 406 U.S. 128, 153–54, 92 S.Ct. 1456, 1472, 31 L.Ed.2d 741 (1972). *See also Rifkin v. Crow,* 574 F.2d 256, 262 (5th Cir.1978) ("[W]here a plaintiff alleges deception by defendant's nondisclosure of material information, the *Ute* presumption obviates the need for plaintiff to prove actual reliance on the omitted information.") The 10b–5 violations in this case indisputably derived in part from Posner's failure to disclose material information. Posner has furnished no evidence hereon to rebut the presumption that PEC relied upon

his non-disclosure and omissions. In short, defendant has failed to demonstrate that any genuine issue of material fact exists as to PEC's reliance.

The matter of loss causation essentially reduces to the question of whether Posner's failures to disclose the elements of his scheme to defraud Fischbach actually inflicted losses on PEC. *See Bloor v. Carro, Spanbock, Londin, Rodman & Fass,* 754 F.2d 57, 61 (2d Cir.1985) ("[W]here a 10(b) claim is based not on specific misrepresentations or omissions, but rather on a 'comprehensive scheme to defraud,' the plaintiff must still demonstrate causation in fact by showing that defendant's allegedly fraudulently activities were actually responsible for plaintiff's injuries.") PEC shows that it incurred losses when it overpaid Boesky for the bloc of stock it purchased. The Court in *Drexel* explicitly found in the SEC action that PEC "picked up ... about $3.6 million of the loss on Boesky's investment," *Drexel,* 837 F.Supp. at 592; that to pay for the Fischbach stock, PEC was forced to issue $56 million in securities, *id.;* and that Drexel was paid $3 million for its services in connection with the transactions. *Id.* Again, these findings were integral to the Court's analysis in the SEC suit and essential to the judgment ultimately rendered. While these various elements in the fraudulent scheme may not necessarily determine the quantum of the loss incurred by PEC (i.e., the issue of damages, not now before the Court), they do establish that Posner's comprehensive scheme to defraud was actually responsible for costs and losses caused to PEC. The admission of counsel for the defendant in the record acknowledges that "[i]t is unquestionable that the same facts and circumstances are involved in both [this] case and the SEC

---

**3.** In its Opinion and Findings in the S.E.C. suit against Posner, the Court explicitly found the following facts, integral to the whole Posner story: Posner entered into a conspiracy with Milken, Boesky and Drexel, to violate the federal securities laws by parking Fischbach stock, *Drexel,* 837 F.Supp. at 590; Posner omitted to file requisite Schedule 13Ds to conceal his beneficial ownership in Fischbach, *id.* at 606–08; Posner directed PEC to purchase Boesky's stock at a cost that was approximately $10 higher than the market price per share, *id.* at 592, 599; "PEC

thereby picked up ... about $3.6 million of the loss on Boesky's investment," *id.;* to pay for the stock the Posners acquired from Boesky, PEC's subsidiary was forced to issue approximately $56 million in securities through Drexel, *id.;* and PEC was forced to pay Drexel, which underwrote the offering, fees of $3 million. *Id.* More specifically, the Court found that Posner's arrangement with Boesky constituted a blatant scheme to defraud in violation of section 10(b) and Rule 10b–5. *Id.* at 609.

case." Fox. Aff. Ex. H at 2. No evidence has been presented to suggest that a genuine issue of material fact exists as to loss causation. Summary judgment of liability consequently is due to the plaintiff on plaintiff's 10b–5 claims herein.

### C. Breach of fiduciary duties

 Plaintiff also seeks summary judgment of liability for Posner's alleged breach of his fiduciary duties to PEC. The Court's findings in *Drexel* clearly demonstrate that Posner breached his fiduciary duties by virtue of his status as an officer and director of PEC.

Defendant raises two challenges to plaintiff's claim of fiduciary breach: (i) the nature of the fiduciary violations alleged by plaintiff is unclear; and (ii) the breaches of fiduciary duty were neither actually litigated in the SEC action nor were necessary to judgment in that action. Those contentions are specious.

The nature of defendant's alleged violations of his fiduciary duties is clear from even a cursory reading of the complaint herein, plaintiff's summary judgment papers and the decision in the *Drexel* enforcement action. *Drexel* establishes the following violations of defendant's fiduciary duties: Posner's secret arrangement with Milken and Boesky to park Fischbach stock with Boesky; PEC was caused to file false reports of the transactions with the SEC; Boesky was secretly guaranteed that any losses Boesky might incur would be made good; Posner's arrangement with Milken that PEC would purchase the stock from Boesky in secrecy on the London over-the-counter exchange at a price $10/share in excess of the market price to disassociate the takeover price from the true nature of the transaction to repay Boesky's costs in part; the issuance by PEC of $56 million in debt securities in part to pay for said stock; and the use of $3 million of PEC funds to pay Drexel for its part of the arrangements. There is nothing unclear about these fiduciary breaches.

Defendant's second contention, that these breaches were not litigated or necessary to the result reached in *Drexel*, is similarly unavailing. The conduct listed above were key to the findings of liability in the *Drexel* litigation; all were actually and necessarily established. So too was the Court's factual finding and conclusion that Posner "engaged in fraudulent conduct in [his] corporate capacities." 837 F.Supp. at 615. The Court explicitly took into consideration all these facts—as well as Posner's "long and notorious history of engaging in self-dealing and corporate waste to the detriment of the public shareholders of the companies under their control," *id.* at 603—in deciding to ban Posner permanently from the boardrooms of listed corporations. Together these acts clearly evidence that Posner repeatedly used his PEC corporate offices to further his personal interests at the expense of the corporation, thereby breaching his fiduciary duties owed to the corporation.

Plaintiff's motion for partial summary judgment of liability on his claim for breach of fiduciary duties established by collateral estoppel emanating from the *Drexel* findings and judgment is well grounded.

### Conclusion

Plaintiff's motion for partial summary judgment of liability of Victor Posner on the claims herein based on Section 10(b) and Rule 10b–5 and on breach of fiduciary duty is granted. This opinion and the minutes of the hearing on this motion, which are hereby made part of this order and decision, shall constitute the findings of fact and conclusions of law in accordance with Fed.R.Civ.P. 52(a). The trial on the issue of damages shall proceed as scheduled.

**SO ORDERED.**