The BOARD OF TRUSTEES OF THE EQUITY–LEAGUE PENSION TRUST FUND, Plaintiff–Appellee,

v.

Cheryl ROYCE, Defendant–Appellee,

and

Kate MacLeod, Defendant–Appellant.

No. 99–9123.

United States Court of Appeals, Second Circuit.

Argued Aug. 31, 2000.

Decided Jan. 16, 2001.

Sara A. Corello, Spivak, Lipton, Watanabe, Spivak & Moss, LLP, New York, NY, for Plaintiff–Appellee.

Cheryl Royce, pro se, New York, NY, for Defendant–Appellee.

Dennis Rapps, New York, NY, for Defendant–Appellant.

Before KEARSE, JACOBS and STRAUB, Circuit Judges.

JACOBS, Circuit Judge:

In 1985, Mark Dovey designated his separated spouse, Cheryl Royce, as beneficiary of his retirement benefits in the event of his death. Dovey later revoked this designation and named his sister, Kate MacLeod, as sole beneficiary. After he died in 1997, Royce and MacLeod submitted competing claims for the death benefit. Dovey's pension fund, the Equity–League Pension Trust Fund (the "Fund"), determined that Royce was the proper beneficiary because she had never consented to the change in beneficiary. In prudence, however, the Fund filed this interpleader action, seeking a declaration that its award of benefits to Royce was proper. The district court granted summary judgment to the Fund.

Appellant MacLeod relies on 29 U.S.C. § 1055(c)(2)(B), which provides that "[e]ach plan shall provide" that an election to waive a surviving spouse annuity is conditioned upon a finding that spousal consent is unavailable by reason of certain designated circumstances or *"other* circumstances as the Secretary of the Treasury may by regulations prescribe" (emphasis added); and on 26 C.F.R. § 1.401(a)–20, Q & A 27, in which the Secretary prescribed that one such other circumstance is a legal separation between the spouse and the participant. We hold that even if the Treasury regulation applies in this case, the Fund correctly determined that Dovey's redesignation of beneficiary was ineffective. Accordingly, we affirm.

## BACKGROUND

The material facts are undisputed. The Fund is a multiemployer, defined benefit pension plan for actors. As an "employee pension benefit plan," it is governed by the Employee Retirement Income Security Act ("ERISA"), ERISA §§ 3(2)(A), 3(3), 4(a), 29 U.S.C. §§ 1002(2)(A), 1002(3), 1003(a). The terms of the Fund are documented in the Equity–League Pension Plan (the "Pension Plan").

Dovey married Royce in 1978. In 1982, they executed a separation agreement. Three years later, Dovey completed a Fund beneficiary form, designating Royce as his beneficiary "to receive any benefits that may be payable under the Pension Plan ... in the event of my death." In 1990, Dovey completed a second death-benefits form naming MacLeod as his beneficiary. The 1990 form states that all previous designations are revoked.

At the time of his death on December 5, 1997, Dovey was a fully vested participant in the Fund who had not yet retired. The Pension Plan provides that a pre-retirement death benefit is payable *either* to the deceased's spouse or—if certain conditions are met—to another beneficiary designated by the participant. Shortly after Dovey's death, Royce and MacLeod both claimed the death benefit. The Fund determined that Royce was entitled to the money as Dovey's "surviving spouse" under the Pension Plan and the Retirement Equity Act ("REA"), 29 U.S.C. §§ 1052–56. MacLeod's appeal to the Administrative Committee of the Fund's Trustees was unsuccessful. The Fund thereafter filed this interpleader action, seeking a declaratory judgment that its determination in favor of Royce was correct. MacLeod appeals from the district court's entry of summary judgment in favor of the Fund.

## DISCUSSION

MacLeod's sole argument on appeal concerns a Treasury regulation promulgated pursuant to the REA. MacLeod believes that under the regulation, Dovey's separation from Royce validated his designation of MacLeod as his beneficiary.

We review the district court's grant of summary judgment de novo. *See Butler v. New York State Dept. of Law*, 211 F.3d 739, 743 (2d Cir.2000). Summary judgment is appropriate only where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

The REA is a 1984 amendment to ERISA designed "to ensure that individuals whose spouses die before their retirement would nevertheless receive the spouses' pension benefits." *Lefkowitz v. Arcadia Trading Co. Ltd. Benefit Pension Plan*, 996 F.2d 600, 601 (2d Cir.1993); *see also Boggs v. Boggs*, 520 U.S. 833, 843, 117 S.Ct. 1754, 1761, 138 L.Ed.2d 45 (1997) (noting that Congress intended "to ensure a stream of income to surviving spouses"). As amended by the REA, 29 U.S.C. § 1055 requires the Fund to provide, "in the case of a vested participant who dies before the annuity starting date and who has a surviving spouse, a qualified preretirement survivor annuity ["QPSA"] ... to the surviving spouse of such participant."[1] 29 U.S.C. § 1055(a)(2).

A participant may waive his spouse's QPSA if "the spouse consents in writing to the designation of another beneficiary, which designation also cannot be changed without further spousal consent, witnessed by a plan representative or notary public." *Boggs*, 520 U.S. at 842, 117 S.Ct. at 1761 (citing 29 U.S.C. § 1055(c)(2)); *see also Hurwitz v. Sher*, 982 F.2d 778, 783 (2d

Cir.1992) (noting that a waiver must follow "the explicit requirements of the statute"). The language of the Pension Plan tracks § 1055 in granting the QPSA entitlement to surviving spouses and in describing the conditions necessary for a valid spousal consent to a waiver. The Fund periodically sent Dovey and other participants the following alert: *"If you want someone other than your spouse to receive* [the death benefit,] *you and your spouse must both sign a statement rejecting"* it.

■ It is undisputed that (1) Royce was Dovey's "surviving spouse" at the time of his death and (2) Royce never consented to the designation of another beneficiary. The statute also provides, however, in 29 U.S.C. § 1055(c)(2), that a valid waiver can be effected without spousal consent in "certain limited circumstances." *Boggs*, 520 U.S. at 842, 117 S.Ct. at 1761. MacLeod argues that the marital separation of Dovey and Royce is one of those "limited circumstances," thus validating Dovey's 1990 revocation of Royce's rights as well as his designation of MacLeod as the proper beneficiary.

Under § 1055(c)(2)(B), "[e]ach plan shall provide" that a participant's election to waive the surviving spouse annuity

shall not take effect unless—

. . .

(B) it is established to the satisfaction of a plan representative that [spousal consent] may not be obtained because there is no spouse, because the spouse cannot be located, or because of such *other circumstances as the Secretary of the Treasury may by regulations prescribe.*

§ 1055(c)(2)(B) (emphasis added). The Secretary of the Treasury has specified by regulation that one such "other circumstance" is a legal separation between the spouse and the participant, *see* 26 C.F.R.

---

[1]. Section 1055 applies to the Fund because the Fund is structured as a "defined benefit plan." 29 U.S.C. § 1055(b)(1)(A) ("This sec-
tion shall apply to [inter alia] any defined benefit plan....").

§ 1.401(a)–20, Q & A 27, and that regulation is the basis for MacLeod's appeal.

The Pension Plan, however, does not provide that a legal separation amounts to a spousal waiver sufficient to allow a re-designation of beneficiary to become effective. At all relevant times, the Pension Plan provided that consent was unnecessary only "if the Participant establishe[d] to the satisfaction of the Plan Administrator that such written consent cannot be obtained *because there is no Spouse or the Spouse cannot be located.*" (MacLeod does not dispute that Royce was Dovey's spouse and that Royce could have been found; for the last several years of Dovey's life, Royce lived in an apartment across the hall from him.)

MacLeod argues that the Treasury regulation applies to her claim because the Pension Plan must be read to incorporate the final clause of § 1055(c)(2)(B) (i.e., that consent is not required if it cannot be obtained "because of such other circumstances as the Secretary of the Treasury may by regulations prescribe"). Our precedents afford some support for Mac-Leod's argument.

We held in *Lefkowitz* that at least some of § 1055's provisions are "mandatory, not optional." *Lefkowitz*, 996 F.2d at 603. In *Lefkowitz*, the deceased participant had designated his daughter to receive his death benefit, and the plan made no reference to the QPSA rights of a surviving spouse. *See id.* at 601, 603. We nevertheless affirmed summary judgment awarding the death benefits to (the estate of) the spouse on the ground that § 1055 confers QPSA rights on surviving spouses whether or not the pension plan language reflects the entitlement. *See id.* at 603–604; *see also Grabois v. Jones*, 89 F.3d 97, 101 (2d Cir.1996) ("If the pension funds are covered by ERISA's surviving spouse annuity provision, 29 U.S.C. § 1055 . . . [,] then the direct commands of the statute govern the distribution of these benefits."). Similarly,

we held in *Hurwitz v. Sher*, 982 F.2d 778, 781 (2d Cir.1992) that a spouse's consent to a QPSA waiver is invalid unless it satisfies the "statutory specifications" of 1055(c)(2)(A). While relevant, *Lefkowitz* and *Hurwitz* do not compel the conclusion that a plan administrator must consider Treasury-prescribed substitutes for consent regardless of the plan's governing documents, because each case relied in part on the REA's evident statutory purpose of protecting spouses' rights to retirement benefits. *See Lefkowitz*, 996 F.2d at 604 (Congress' "desire to benefit spouses of pension plan beneficiaries implies an intent to apply the REA to pension plans whether or not they were amended to provide a QPSA, because to hold otherwise would permit recalcitrant administrators of pension plans to avoid providing spousal benefits simply by declining to amend their plans"); *Hurwitz*, 982 F.2d at 781 (noting Congress' intent "to ensure that a participant's spouse receives survivor benefits"). The rule of incorporation that MacLeod advocates would not protect spouses; it would disadvantage them by forcing plans to recognize additional exceptions to the consent requirement. Moreover, the recognition of exceptions to consent where (as here) the pension plan itself awards the death benefit to the spouse, may defeat a spouse's legitimate expectations in making financial plans. In any event, we need not decide this question now, because we hold that even if the Pension Plan is read to incorporate Treasury regulation 26 C.F.R. § 1.401(a)–20, Q & A 27, Royce's consent was required to effect a valid waiver of her QPSA rights.

■ The Treasury regulation provides in relevant part that "*if the participant is legally separated or the participant has been abandoned (within the meaning of local law) and the participant has a court order to such effect,* spousal consent is not required." 26 C.F.R. § 1.401(a) 20, A 27 (emphasis added).[2] It is undisputed that

<hr>

2. There is an exception to this rule: effect is

given to a "qualified domestic relations or-

no court order was entered with respect to Royce and Dovey's separation agreement. MacLeod therefore must contend that the phrase "and the participant has a court order to such effect" qualifies *only* the term "abandoned" and does *not* qualify the term "legally separated."

We conclude on textual evidence that the phrase "and the participant has a court order to such effect" modifies "separated" as well as "abandoned." The term "abandoned" is undeniably qualified by a phrase that is limited to abandonment, and that limited qualification is achieved by parentheses, i.e., "abandoned (within the meaning of local law)." (A similar qualification is made for separation by the adverb in "legally separated.") If the phrase "and the participant has a court order to such effect" were intended to modify only the term "abandoned," the drafters would not have closed the parenthesis after the qualification concerning abandonment, and the ending phrase would have been "abandoned (within the meaning of local law, and the participant has a court order to such effect)." The drafters' decision to close the parenthesis after "of local law" signals that the remainder of the sentence modifies *both* the separation exception and the abandonment exception.

Our conclusion is supported by a more subtle item of textual evidence relied upon by the district court: the "repetitious use"

of the word "participant." *The Board of Trustees of the Equity–League Pension Trust Fund v. Royce,* 1999 WL 587796, at *3 (S.D.N.Y. Aug. 5, 1999). The court observed that "[i]f the 'court order' language only modified the exception for abandonment, as MacLeod contends, then the word 'participant' before 'court order to such effect' would be redundant." *Id.*

In arguing that separation is a proxy for consent under the Treasury regulation regardless of whether the separation was pursuant to a court order, MacLeod cites our paraphrase of that regulation in *Mendez v. Teachers Insurance and Annuity Association and College Retirement Equities Fund,* 982 F.2d 783 (2d Cir.1992): "under the relevant Treasury Regulation, a non-consensual waiver of spousal benefits accruing under ERISA occurs only if: (1) the participant is legally separated; or (2) the participant 'has been abandoned (within the meaning of local law) *and* the participant has a court order to such effect.'" *Id.* at 787–88 (quoting 26 C.F.R. § 1.401(a) 20, A–27 (1991)) (alteration in original); *see also id.* at 785–86. Insofar as this paraphrase incidentally concerns marital separation, it is at most non-binding dictum.[3] *See, e.g., Ross v. Artuz,* 150 F.3d 97, 101 (2d Cir.1998). The circumstance in *Mendez* was abandonment, not separation, *see id.* at 785–88, and the paraphrase supported the conclusion that "a

---

der" ("QDRO") that provides that "legal separation" or "abandonment" is *not* a substitute for consent. 26 C.F.R. § 1.401(a)–20, A–27. Such an order is defined at 26 U.S.C. § 414(p) and 29 U.S.C. § 1056(d), *see* 26 C.F.R. § 1 .401(a)–13(g)(1), and is largely exempt from ERISA's general prohibition on alienation of benefits. *See* 29 U.S.C. § 1056(d)(3); § 1144(b)(7); *Hurwitz,* 982 F.2d at 780 n. 2. There is no such order in this case.

**3.** We would create interpretive difficulties if we were to treat *Mendez*'s paraphrase as an implicit holding. The paraphrase states that "a non-consensual waiver of spousal benefits accruing under ERISA occurs *only if*" the participant can satisfy the separation or abandonment exceptions. *Mendez,* 982 F.2d at 787 (emphasis added). But as we have ex-

plained, those are not the "only" two substitutes for consent. The statute as well as the regulation provide that consent is unnecessary (or at least that a plan may provide that consent is unnecessary) if "it is established to the satisfaction of a plan representative that [consent] may not be obtained because there is no spouse, [or] because the spouse cannot be located." 29 U.S.C. § 1055(c)(2)(B); *see* 26 C.F.R. § 1.401(a)–20, A–27. Moreover, the regulation provides that if "the spouse is legally incompetent to give consent, the spouse's legal guardian, even if the guardian is the participant, may give consent." 26 C.F.R. § 1.401(a)–20, A–27. We do not read the convenient paraphrase in *Mendez* as a gloss on the regulatory meaning of words and terms that were not at issue in that case.

showing of legal abandonment, *coupled with a court order to that effect,* would have presented a colorable claim [to death benefits by a person other than the spouse] in the instant case." *Id.* at 788 (emphasis added).

* * *

It is possible that MacLeod's claim is untimely. The statute provides that a participant's election to waive the surviving spouse pension—whether or not consented to by the spouse—must be made during the "applicable election period," 29 U.S.C. § 1055(c)(1)(A)(i), a period that "ends on the date of the participant's death," *id.* § 1055(c)(7)(B). The Pension Plan's language reflects this provision, and adds that where the spouse has not consented to a waiver, "the Participant" must establish that consent is unnecessary. Dovey himself never attempted to make this showing. Because we decide this appeal on the merits, and because the timeliness issue was not identified by the parties, we do not answer the timeliness question. We posit it only to avoid giving the impression that it is decided implicitly.

## CONCLUSION

The judgment of the district court is affirmed.