## DAVIS ET AL. *v.* WILLIFORD ET AL.

CERTIORARI TO THE SUPREME COURT OF THE STATE OF OKLAHOMA.

No. 316. Submitted May 4, 1926.—Decided June 1, 1926.

1. Case held reviewable by certiorari and not by writ of error. P. 486.
2. Under the Act of April 26, 1906, permitting members of the Five Civilized Tribes to will their property, but providing that "no will of a full-blood Indian devising real estate shall be valid, if such last will and testament disinherits the parent, wife, spouse, or children of such full-blood Indian, unless acknowledged before and approved by a judge of the United States court for the Indian Territory, or a United States commissioner,"—to give validity to such a will, it was necessary not only that it be in fact acknowledged by the testator before the officer, but that the officer place a certificate of such acknowledgment upon the will, as an essential part of the acknowledgment itself. P. 486.
3. Parol evidence inadmissible to supply lack of such certificate. *Id.* 106 Okla. 208, affirmed.

CERTIORARI to a judgment of the Supreme Court of Oklahoma which reversed a judgment upholding an instrument as the will of a deceased full-blood Chickasaw Indian devising his surplus allotment away from his wife and children. A writ of error was also taken, and is dismissed.

*Messrs. Charles J. Kappler, I. R. McQueen,* and *C. B. Kidd* were on the brief for petitioners.

No appearance for respondents.

MR. JUSTICE SANFORD delivered the opinion of the Court.

This case involves a single question relating to the construction and effect of § 23 of the Act of April 26, 1906,

c. 1876,[1] dealing with the Five Civilized Tribes. This reads: " Every person of lawful age and sound mind may by last will and testament devise and bequeath all of his estate, real and personal, and all interest therein: *Provided,* That no will of a full-blood Indian devising real estate shall be valid, if such last will and testament disinherits the parent, wife, spouse, or children of such full-blood Indian, unless acknowledged before and approved by a judge of the United States court for the Indian Territory, or a United States commissioner."

The subject-matter of the controversy—which arose in the course of a proceeding instituted in a local court of Oklahoma to foreclose a mortgage—is a part of a surplus allotment of 160 acres out of tribal lands made in 1904 to Frazier McLish, a full-blood Chickasaw Indian, and held by him subject to restrictions against alienation. In July, 1906, he executed a will by which he bequeathed one dollar to his wife and each of his children, and devised all the residue of his property, including this allotment, to his sister. In 1907, McLish having died, the will was probated and recorded, the only endorsement which it bore being the following: "Approved by me July 9, 1906. Thomas N. Robnett, U. S. Commissioner for the Southern District, Indian Territory, First Commissioner's District, in accordance with the Act of Congress of April 26, 1906. (Seal)."

For present purposes it suffices to say that the proceeding in the district court involved a controversy as to the title to part of this allotment, arising between J. A. White, to whom it had been conveyed by the devisee, and S. H. Davis, to whom White had given a mortgage, on the one side; and the widow and children of the testator, on the other side. White and Davis claimed that the will was valid and had passed title to the devisee; and the widow and children claimed that it was invalid, since it had not

---

[1] 34 Stat. 137, 145.

been acknowledged before a commissioner or judge as required by the Act of 1906, and that the title to the allotment had descended to them.

On the trial the United States Commissioner testified that at the time he approved the will, the testator had appeared before him and acknowledged its execution for the purposes therein mentioned, but that, by inadvertence, the certificate of such acknowledgment had been omitted. The court, in view of this evidence, held that as the will had been in fact acknowledged before the Commissioner, it was valid and vested title to the allotment in the devisee; and gave judgment accordingly. On appeal, this was reversed by the Supreme Court of Oklahoma, which held that parol testimony was inadmissible to supply the lack of a certificate of acknowledgment, and that under the Act of 1906 the will was invalid. 106 Okla. 208.

The case is now before us on a writ of error, which was allowed in March, 1925, and a petition for a writ of certiorari, which was postponed to the hearing on the merits. The writ of error must be dismissed under the Jurisdictional Act of 1916; and the writ of certiorari is granted.

Davis and White do not deny that the will disinherited the testator's wife and children, *Re Byford's Will*, 65 Okla. 159, 162, and that it was invalid unless acknowledged before the Commissioner, as well as approved by him. Their contention is, that under a proper construction of § 23 of the Act of 1906, where a full-blood Indian who devises his lands to the exclusion of his wife and children, appears before a Commissioner and acknowledges the document presented to be his will, " it is the fact of such acknowledgment by said testator, and not any certificate by the officer, which gives validity to the will "; and they expressly concede that " if, on the other hand, Congress intended to require that a certificate of acknowledgment be placed on the will itself by the officer," they cannot prevail.

Construing § 23 of the Act in the light of its manifest purpose, we think that Congress intended that to give validity to such a will it was necessary not only that it be in fact acknowledged by the testator before the officer, but that the officer place a certificate of such acknowledgement upon the will, as an essential part of the acknowledgement itself.

Prior to the Act of 1906, Indians of the Five Civilized Tribes had no power to dispose of their restricted lands by will. *Taylor* v. *Parker,* 235 U. S. 42, 44; *Blundell* v. *Wallace,* 267 U. S. 373, 374. And in giving them generally such power by § 23 of the Act, it was specifically provided that no will of a full-blood Indian devising real estate and disinheriting his parent, spouse or children, should be valid " unless acknowledged before and approved by a judge of a United States court . . . or a United States Commissioner."

It is clear that it was intended by this proviso to prevent a full-blood Indian from being overreached and imposed upon, and induced for an inadequate consideration or by trickery, to deprive his heirs of their inheritance; and that, to this end, a will devising his land to other persons should not be valid unless acknowledged before and approved by a judicial or quasi-judicial officer of the United States. To make certain of this, the officer was not to approve the will unless the testator appeared before him in person and acknowledged its due execution, and, upon the examination of the testator, the will appeared to be of such a character and based upon such consideration as to warrant its approval. Plainly, it was not intended that such acknowledgment and approval should be a perfunctory matter. And as the will when probated and recorded would be a muniment of title to the land, necessarily a certificate both of the acknowledgment and the approval should appear upon it. We cannot think that Congress intended that in a matter of this solemnity and importance, involving the recorded

title to land, the effect of a will, which when probated and recorded bore no certificate of the acknowledgment or approval essential to its validity, should thereafter rest in parol, subject to all the uncertainty that would follow if its validity could be established—when the lips of the testator were closed—by parol evidence as to the fact of acknowledgment or approval. This would destroy the certainty which is essential in muniments of title appearing upon the public records. If this were possible, the subsequent establishment of the validity of the will would largely depend upon the lapse of time before it was brought into litigation, and the availability, at that time, of evidence to establish or to contradict a claim that it had in fact been acknowledged or approved; and where portions of the land had been conveyed by the devisee to different persons, the result of suits involving the validity of the will, might often depend upon the weight attached by the courts to diverse evidence in different suits, and lead to judgments establishing the validity of the will as to the purchaser of one portion of the land, and its invalidity as against another.

Clearly, we think, Congress did not contemplate such a disastrous result, but in granting by the Act to a full-blood Indian, under its guardianship, the power to dispose of his restricted land by will, intended that a will disinheriting those to whom his land would otherwise descend, should be valid only when the facts of acknowledgment and approval should both be certified by the officer on the will, and appear upon it when probated and placed of record.

We conclude here that the will, by reason of the lack of any certificate of acknowledgment, was not " acknowledged before " the Commissioner within the meaning of the Act, and, being therefore invalid, did not pass title to the allotment to the devisee. The judgment is accordingly

*Affirmed.*