282 F.3d 285
 Mary M. HAGWOOD, co-administrator of the estate of Toni J. Odom; Tammy O. Reeves, co-administrator of the estate of Toni J. Odom; Tony C. Odom, Plaintiffs-Appellants,
v.
Charles C. NEWTON, Jr.; Bellsouth Corporation; Bellsouth Savings and Security Plan; Bellsouth Employee Stock Ownership Plan, Defendants-Appellees.
 No. 01-1909.
 United States Court of Appeals, Fourth Circuit.
 Argued January 23, 2002.
 Decided February 26, 2002.
 
 COPYRIGHT MATERIAL OMITTED ARGUED: John N. Hutson, Jr., Howard, Stallings, From & Hutson, P.A., Raleigh, North Carolina, for Appellants. Michael Terry Medford, Manning, Fulton & Skinner, P.A., Raleigh, North Carolina, for Appellees. ON BRIEF: Brian E. Moore, Howard, Stallings, From & Hutson, P.A., Raleigh, North Carolina, for Appellants. John C. Dorsey, Manning, Fulton & Skinner, P.A., Raleigh, North Carolina, for Appellees.
 Before NIEMEYER and TRAXLER, Circuit Judges, and CYNTHIA HOLCOMB HALL, Senior Circuit Judge of the United States Court of Appeals for the Ninth Circuit, sitting by designation.
 Affirmed by published opinion. Judge NIEMEYER wrote the opinion, in which Judge TRAXLER and Senior Judge HALL joined.
 OPINION
 NIEMEYER, Circuit Judge.
 
 
 1
 A month before they were married, Toni Odom and Charles Newton signed a "Premarital Agreement," agreeing that the property of each would remain separate after their marriage and explicitly waiving any right to each other's property. Two years after Odom and Newton were married, Odom died. Her estate and her father now seek to enforce the Premarital Agreement against Newton's spousal rights in Odom's employee stock plan and savings plan, conferred on Newton by § 205(a) of the Employee Retirement Income Security Act of 1974, as amended by the Retirement Equity Act of 1984 ("ERISA"), 29 U.S.C. § 1055(a). Because the Premarital Agreement did not comport with ERISA's formal requirements for waiver of Newton's spousal rights, we conclude that the agreement cannot be enforced to deny Newton's spousal rights in Odom's benefit plans. Accordingly, we affirm the judgment of the district court, which reached the same conclusion.
 
 
 2
 * Toni Odom and Charles Newton met in 1983 while both were working as linemen and line-splicers for BellSouth Corporation. A few months later, they began living together. Each was a participant in BellSouth's Employee Stock Ownership Plan ("ESOP") and its Savings and Security Plan ("SSP"). In 1987, Odom named Newton her beneficiary on the SSP, but she did not name a beneficiary on the ESOP.
 
 
 3
 Odom and Newton decided to get married in 1995. Because Odom wanted to ensure that some of her stock holdings would be passed on to her father for his care, Odom and Newton agreed, one month before their marriage, to sign a formal Premarital Agreement drawn up by an attorney and executed before a notary public. The agreement provided that "all separately owned property and the income from it belonging to each of them at the commencement of the marriage or obtained by either of them during the marriage shall remain his or her separate property and that neither party will obtain any rights in the property of the other by virtue of the marriage." The agreement referred explicitly to "any stocks, bonds, employee savings and security plans and retirement accounts." Newton specifically waived any rights that he had in Odom's "employee savings and security plans and retirement accounts." Both Odom and Newton executed releases of "marital rights" which provided, in the case of Newton, that he "does hereby waive and release unto Ms. Toni J. Odom, her heirs, executors, administrators and assigns (a) all rights to a distributive share of Mrs. Toni J. Odom's estate upon her death; ... and (f) all other rights and interest in property, real and personal, which he has or may acquire by reason of Ms. Toni Odom's death." The agreement did not mention by name the BellSouth ESOP and SSP, and neither party included language designating a beneficiary for individually owned property.
 
 
 4
 In 1996, Odom began experiencing symptoms of Cruetzfeldt-Jakob Disease (commonly known as "mad cow's disease"), a rare, fatal brain disorder which causes rapid, progressive dementia and associated neuromuscular disturbances. After her illness had been misdiagnosed as a mental illness, Odom was treated in several hospitals. By September 1997, while she was a patient at Dorothea Dix Hospital in Raleigh, North Carolina, doctors reported that she was confused and delusional — "she lives in a `dream world'" — although they reported that with confrontation she could be brought back to reality. During this period, Newton had Odom execute a power of attorney giving him "full power to act in [her] name, place and stead." A few months later, on January 12, 1998, Newton exercised the power of attorney to designate himself as beneficiary on the BellSouth ESOP and SSP. Two weeks later Odom died — at age 41.
 
 
 5
 Odom's estate and her father (collectively the "Estate") commenced this action against Newton to give effect to the intent evidenced by the Premarital Agreement of having Odom's property distributed through her estate as her separate property and to reverse Newton's actions in designating himself the beneficiary of Odom's ESOP and SSP. To that end, the complaint sought a declaratory judgment, as well as damages for fraud, constructive fraud, breach of contract, conversion, and breach of fiduciary duty. It also requested that the court impose a constructive trust over Newton's interest in the ESOP and SSP. Newton filed an answer to the complaint, denying the claims. In addition, he requested a declaratory judgment that he was "the proper and legal beneficiary under the BellSouth employee benefit plans."
 
 
 6
 On the parties' cross-motions for summary judgment, the district court entered judgment for Newton, declaring that he was "the beneficiary of all amounts in Toni J. Odom's account under the BellSouth Saving and Security Plan and BellSouth's Employment Stock Ownership Plan." In reaching this judgment, the court reasoned that the Bell South ESOP and SSP were governed by ERISA and that, under ERISA, the Premarital Agreement did not constitute "an effective waiver of benefits under [29 U.S.C.] § 1055 and the plans." The court concluded that the Estate's request to establish a constructive trust over the property and to set aside Newton's designation of himself as a beneficiary were preempted by ERISA and effectively decided by the court's ruling on the waiver issue.
 
 
 7
 From the district court's judgment, the Estate filed this appeal.
 
 II
 
 8
 The parties agree that BellSouth's ESOP and SSP are pension plans that are regulated by ERISA. See 29 U.S.C. § 1002(2)(A) (defining "employee pension benefit plan" and "pension plan"); see also Boggs v. Boggs, 520 U.S. 833, 836, 117 S.Ct. 1754, 138 L.Ed.2d 45 (1997) (applying ERISA's requirements to a BellSouth employee savings plan and a BellSouth ESOP).
 
 
 9
 Section 205 of ERISA requires that each pension plan of a participant, whose plan has vested but who dies before the annuity starting date, provide to the surviving spouse a "qualified preretirement survivor annuity." 29 U.S.C. § 1055(a)(2). That section also provides that these surviving-spouse rights may be waived only if:
 
 
 10
 (i) the spouse of the participant consents in writing to such election [to waive], (ii) such election designates a beneficiary (or a form of benefits) which may not be changed without spousal consent (or the consent of the spouse expressly permits designation by the participant without any requirement of further consent by the spouse), and (iii) the spouse's consent acknowledges the effect of such election [to waive] and is witnessed by a plan representative or a notary public.
 
 
 11
 Id. § 1055(c)(2)(A).
 
 
 12
 Implementing these requirements, the BellSouth plans themselves included provisions requiring that any consent waiving spousal rights be given formally. The ESOP provided:
 
 
 13
 If you are married, it is a legal requirement that your spouse be your sole beneficiary, unless your spouse agrees by signing the appropriate form to let you designate a primary beneficiary other than, or in addition to, your spouse. Your spouse's signature must be notarized.
 
 Similarly, the SSP provided:
 
 14
 [I]f a Participating Employee has a surviving "Spouse" ... at his death, his surviving Spouse shall be deemed to be his designated beneficiary for the entire nonforfeitable amount in his Account, unless ... such Spouse has consented (or consents) in writing as to the designation of a specific person or persons (including a trust) as beneficiary of all or part of the Participating Employee's Account, and such consent is witnessed by a notary public and acknowledges the effect of such designation.
 
 
 15
 In sum, under both ERISA and the language of the plans, in order for Newton to have waived his spousal rights, he must have executed a writing, witnessed by a plan representative or a notary public, in which he designated a beneficiary other than himself and acknowledged that he was giving up the rights conferred on him by ERISA.
 
 
 16
 The question presented in this case is whether the Premarital Agreement signed by Newton and Odom fulfills the waiver requirements of ERISA and the two plans. For the reasons that follow, we conclude that the Premarital Agreement does not fulfill these requirements.
 
 
 17
 First, when Newton signed the Premarital Agreement, he did not possess the spousal rights conferred on him by 29 U.S.C. § 1055(a). He was not Odom's spouse and therefore could not satisfy the requirement of § 1055(c) that "the spouse of the participant consent[] in writing to such election [to waive]." Although Newton clearly indicated in the Premarital Agreement that he intended to and indeed would waive such rights when he became married, he did not, after he became married, execute a formal waiver giving up the spousal rights that he then acquired. Perhaps Odom could have compelled Newton to sign such a document by invoking the provision of the Premarital Agreement that "each of the parties to this Agreement shall execute, acknowledge, and deliver all documents and instruments that may be deemed necessary to accomplish the terms of this Agreement," but she did not do so. As a result Newton, as a spouse, never provided the written consent required by 29 U.S.C. § 1055(c) and by the language of the plans themselves.
 
 
 18
 The Estate argues that the Premarital Agreement, although executed before the marriage, nevertheless had the effect of a post-marriage waiver because the intent of the parties was clear. We agree with the Estate that Odom and Newton's intent at the time they executed the Premarital Agreement was clear. But that intent was manifested before their marriage. We have no evidence of Newton's intent after he became Odom's spouse and after he had statutorily acquired his ERISA spousal rights in her pension plans. Thus, the intent revealed in the Premarital Agreement may not have been Newton's intent once he had the spousal rights, and ERISA requires that that intent be manifested anew by the spouse through the formalities of a consent in conformance with 29 U.S.C. § 1055(c).
 
 
 19
 The spousal rights conferred by § 1055(a) were intended to "ensure a stream of income to surviving spouses," Boggs, 520 U.S. at 843, 117 S.Ct. 1754, and the formalities required in § 1055(c) are included to protect against the risks of a spouse's unwitting waiver of those rights, Lasche v. George W. Lasche Basic Profit Sharing Plan, 111 F.3d 863, 867 (11th Cir.1997) (noting that formalities are necessary "to ensure a valid waiver of a spouse's retirement plan [and] are consistent with the legislative policy of protecting spousal rights"). ERISA's formalities must, therefore, be strictly enforced. In Lasche, for example, the court held that a waiver was invalid under § 1055 simply because the signatures had not been witnessed by a notary as required by that section. Id.
 
 
 20
 Our conclusion that a premarital agreement cannot serve as a valid waiver of spousal rights as required by 29 U.S.C. § 1055(c) is further confirmed by the Internal Revenue Service's ("IRS") similar conclusion with respect to the identical requirements in the Internal Revenue Code provisions of ERISA. With the adoption of ERISA, Congress enacted mirror-image counterparts for the Internal Revenue Code to encourage employers, through tax benefits, to establish qualifying pension plans. See Gillis v. Hoechst Celanese Corp., 4 F.3d 1137, 1144-45 & 1144 n. 6 (3d Cir.1993). Thus, the provisions of 29 U.S.C. § 1055(c) are repeated in haec verba in 26 U.S.C. § 417(a), and the Secretary of the Treasury adopted regulations interpreting § 417(a). Those regulations include the following interpretation:
 
 
 21
 Q[uestion] 28: Does consent contained in an antenuptial agreement or similar contract entered into prior to marriage satisfy the consent requirements of sections 401(a)(11) and 417?
 
 
 22
 A[nswer] 28: No. An agreement entered into prior to marriage does not satisfy the applicable consent requirements, even if the agreement is executed within the applicable election period.
 
 
 23
 Treasury Regulation § 1.401(a)-20. Because the IRS is an agency "entrusted to administer" the tax counterpart of ERISA, we defer to its interpretation of 26 U.S.C. § 417(a). See Chevron, U.S.A., Inc. v. Nat'l Res. Def. Council, Inc., 467 U.S. 837, 844, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984); see also Hurwitz v. Sher, 982 F.2d 778, 782 (2d Cir.1992) (applying Treasury Regulation § 1.401(a)-20 to support a conclusion that premarital agreement did not waive spousal benefits under § 205 of ERISA).
 
 
 24
 In reaching our conclusion that premarital agreements generally cannot fulfill the requirements of 29 U.S.C. § 1055(c), we join the unanimous view of other federal courts that have considered the question. See, e.g., National Automobile Dealers & Assocs. Retirement Trust v. Arbeitman, 89 F.3d 496, 502 (8th Cir.1996) (holding that an agreement "signed before the marriage failed to satisfy the waiver requirements of ERISA"); Hurwitz, 982 F.2d at 782 (holding that premarital agreements "do not constitute effective waivers under ERISA"); Ford Motor Co. v. Ross, 129 F.Supp.2d 1070, 1073-74 (E.D.Mich.2001) (holding that "premarital agreement cannot be used to circumvent ERISA's spousal waiver requirements"); Zinn v. Donaldson Co., 799 F.Supp. 69, 73 (D.Minn.1992) (same); Nellis v. Boeing Co., No. 91-1011-K, 1992 WL 122773, *4 (D.Kan. May 8, 1992) (holding that a premarital agreement was not valid waiver because it "was not signed while [the wife] was a spouse with current vested rights in the plans"). But see Estate of Hopkins, 214 Ill.App.3d 427, 158 Ill.Dec. 436, 574 N.E.2d 230 (1991) (holding that premarital agreement was valid waiver under 29 U.S.C. § 1055 even though the parties were not yet married).
 
 
 25
 Our second reason for concluding that the Premarital Agreement in this case did not satisfy 29 U.S.C. § 1055(c) is that the agreement did not "designate[] a beneficiary" for the survivor benefits as required by 29 U.S.C. § 1055(c)(2)(A)(i). In order to ensure that a surviving spouse clearly understand that he or she will not be the beneficiary designated by ERISA, ERISA requires that the surviving spouse actually designate another beneficiary who will receive the benefits in lieu of the surviving spouse. Not only does this requirement ensure voluntariness, but it gives the surviving spouse control over who would receive the benefits in lieu of the surviving spouse. The Premarital Agreement did not satisfy this requirement.
 
 
 26
 The Estate argues that the Premarital Agreement's reservation of property to Odom's estate serves as the designation of a beneficiary. The Agreement provided that Newton was releasing his rights "unto Mrs. Toni J. Odom, her heirs, executors, administrators and assigns." We conclude, however, that this language does not amount to the designation of a beneficiary as required by ERISA. See Arbeitman, 89 F.3d at 502; Zinn, 799 F.Supp. at 73; Nellis, 1992 WL 122773 at *4.
 
 
 27
 In sum, we conclude that the Premarital Agreement in this case does not fulfill the requirements of 29 U.S.C. § 1055(c) because it was executed by parties who were not married and because § 1055 requires that a spouse who actually has, by marriage, the statutory benefit conferred by § 1055(a) waive the right by executing a formal consent form. Additionally, we conclude that Newton did not designate an alternative beneficiary in signing the Premarital Agreement.
 
 
 28
 The Estate queries, with some understandable distress, why the parties' intent should not be given effect. But the law is filled with formalities required to ensure a clear record of a party's intent in particular types of transactions. For example, the statute of frauds requires a writing for specified transactions; the law of wills and estates imposes witnessing requirements for wills; and real property law demands a writing and recordation for conveyances of real property. So too, ERISA requires a notarized writing with specific language to waive spousal rights. These are not merely "perfunctory matters." Davis v. Williford, 271 U.S. 484, 488, 46 S.Ct. 547, 70 L.Ed. 1048 (1926) (declaring a will invalid because it did not have an attached "certification of acknowledgment" as required by federal statute). As the Supreme Court observed in Davis, legal formalities avoid the uncertainty that would result if subjective evidence of important transactions were permitted. Id. at 487-88, 46 S.Ct. 547.
 
 
 29
 Because the Premarital Agreement between Odom and Newton did not meet ERISA's requirements for a waiver of spousal rights, it did not operate as a valid waiver of those rights. Accordingly, we affirm the judgment of the district court.
 
 
 30
 
 AFFIRMED.