**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 07a0822n.06
Filed: December 3, 2007

**Nos. 06-6494, 06-6496**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

GREENEBAUM DOLL & McDONALD PLLC,                )
                                                )
    Plaintiff-Appellee,                       )
                                                )
v.                                              )  ON APPEAL FROM THE UNITED
                                                )  STATES DISTRICT COURT FOR THE
DEBBIE D. SANDLER,                              )  WESTERN DISTRICT OF KENTUCKY
                                                )
    Defendant-Appellee/Appellant,             )
                                                )
SHANNON SANDLER et al.,                         )
                                                )
    Defendants-Appellants/Appellees,          )
and                                             )
                                                )
CHRIS MEINHART, Administrator of the            )
Estate of David Sandler,                        )
                                                )
    Defendant-Appellee.                       )

Before: CLAY, SUTTON, and McKEAGUE, Circuit Judges.

SUTTON, Circuit Judge. Shannon and Nick Sandler contend that their stepmother, Debbie Sandler, breached a prenuptial agreement with their now-deceased father and accordingly has no right to the assets in his retirement account. We affirm the district court's rejection of this claim as a matter of law and remand the case to the district court to consider in the first instance Debbie's claim for attorney fees.

I.

Shortly before their marriage in October 1995, Debbie and David Sandler entered into an prenuptial agreement. In the agreement, Debbie and David "waive[d] and release[d] any claim, demand or interest in any pension, profit-sharing, Keogh or other retirement benefit plan qualified under ERISA and the Internal Revenue Code of the other party and agree[d] to execute any documentation to verify and confirm this fact with the administrator of such plan." JA 27. The agreement required David and Debbie to "execute and provide any instruments or documents at any time requested by the other party that are necessary or proper to effectuate the purposes and goals of [the] Agreement." JA 33. And it provided that, "in the event of David's death, Debbie shall receive David's property described in paragraph[] . . . 6 . . . above [*i.e.*, the paragraph discussing retirement benefits], if and only if she is then living and David and Debbie were married on the date of David's death." JA 31.

After he married Debbie, David joined the law firm of Greenebaum Doll & McDonald and began participating in the firm's retirement plan. Consistent with ERISA, *see* 29 U.S.C. § 1055, the Greenebaum plan designates the participant's surviving spouse as the default beneficiary and allows a participant to designate a beneficiary "other than such spouse if (a) such spouse consents in writing to a specific Beneficiary witnessed by a member of the Retirement Committee or acknowledged before a Notary Public and (b) such consent acknowledges the effect of such consent." JA 231. It also provides that no change in beneficiaries "shall be effective until receipt of the new designation by the Retirement Committee." *Id.*

The marriage did not work out. On May 31, 2005, Debbie left David, and three days later David committed suicide. The two were still married at the time of David's death, as neither one of them had filed for legal separation or divorce. The prenuptial agreement as a result represents "the last written statement of David Sandler's intentions." *Greenebaum Doll & McDonald PLLC v. Sandler*, 458 F. Supp. 2d 420, 422 (W.D. Ky. 2006).

After David's death, his two children from a previous marriage (Shannon and Nick) and Debbie asserted "conflicting claims to" the retirement assets that the Greenebaum law firm held for him in trust. JA 14. "[A]cting as a mere stakeholder," the law firm filed a declaratory judgment action against Debbie, David's estate and David's children to resolve the conflicting claims, indicating that it "ha[d] no Designation of Beneficiary for Mr. Sandler." JA 12–13. The children filed a cross-claim against Debbie, asserting that she breached the prenuptial agreement by claiming an interest in David's retirement assets and by failing to execute—or, in the alternative, by refusing to execute—"any instrument or document necessary to waive her interest in [David's retirement assets], including but not limited to a waiver of any spousal rights under ERISA." JA 22–23.

The district court granted Debbie's motion for summary judgment, holding that the prenuptial agreement by itself did not satisfy either ERISA's spousal-consent requirements or the Greenebaum plan's own requirement "for designation of a new beneficiary or spousal consent to such an action." *Greenebaum*, 458 F. Supp. 2d at 423. The court reasoned that Debbie "was never asked to sign a consent or waiver form[,] . . . so the issue of breach for failure to consent to a designated beneficiary

- 3 -

does not arise." *Id.* at 423 n.3. The court also rejected Debbie's request for attorney fees, concluding that "all other motions are moot." *Id.* at 423 (emphasis omitted).

II.

A.

We first consider the district court's rejection of the children's claim for specific performance of the prenuptial agreement. The children, as an initial matter, concede that the prenuptial agreement fails to meet ERISA's requirements—and with good reason. There is little support for the notion that a prenuptial agreement by itself can satisfy ERISA's spousal-consent requirement. *See Hagwood v. Newton*, 282 F.3d 285, 290 (4th Cir. 2002) ("In reaching our conclusion that premarital agreements cannot fulfill the requirements of [ERISA], we join the unanimous view of other federal courts that have considered the question."); Treas. Reg. § 1.401(a)-20 Q&A–28 ("Q[uestion]: Does consent contained in an antenuptial agreement or similar contract entered into prior to marriage satisfy the [spousal] consent requirements of [those provisions of the Internal Revenue Code that contain the same requirements as ERISA]? A[nswer]: No. An agreement entered into prior to marriage does not satisfy the applicable consent requirements . . . ."). But even if such agreements could in the abstract satisfy the requirement, this one assuredly did not. It did not designate a specific beneficiary (other than Debbie) or authorize David to designate a third-party as the beneficiary without Debbie's consent, which violates 29 U.S.C. § 1055(c)(2)(A)(ii) ("[A spousal] election . . . shall not take effect unless . . . such election designates a beneficiary . . . which may not

be changed without spousal consent (or the consent of the spouse expressly permits designations by the participant without any requirement of further consent by the spouse).").

In pressing their claim, the children thus raise a slightly different argument. They contend that the prenuptial agreement obligates Debbie contractually either "to execute the documentation verifying and confirming her agreement to waive and release her rights in" David's retirement accounts or to pay "the damages resulting from her breach." Br. at 10–11. Leaving to one side the question whether ERISA preempts even this contract claim, the children misread the prenuptial agreement. In paragraph 6, to be sure, it says that "[e]ach party waives and releases any claim, demand or interest in any pension, profit-sharing, Keough or other retirement benefit plan qualified under ERISA and the Internal Revenue Code of the other party and agrees to execute any documentation to verify and confirm this fact with the administrator of such plan." JA 27. But paragraph 10 then adds that, "in the event of David's death, Debbie shall receive David's property described in paragraph[] . . . 6 . . . above, if and only if she is then living and David and Debbie were married on the date of David's death." JA 31.

Read together, the provisions mean that Debbie agreed to waive any claim or interest in David's retirement accounts in the event that the two were divorced—and to execute the necessary documents at that time and upon David's request to confirm such waiver—but not in the event that David died during their marriage. Thus, if David died and if Debbie was still married to him, she was entitled to "receive David's property described in paragraph[] . . . 6"—*i.e.*, David's retirement assets. JA 31. Buttressing this interpretation are the fact that, as the district court noted, "Debbie

Sandler was never asked to sign a consent or waiver form," *Greenebaum*, 458 F. Supp. 2d at 423 n.3, and the fact that the agreement prohibited everyone except Debbie and David from bringing a "cause of action arising or resulting from [the] Agreement," JA 33. As Debbie indicated during her deposition: "This [provision relating to the retirement accounts] was only to be put into effect on the dissolution of our marriage. In the event our marriage was dissolved, then I was agreeing that I would sign whatever he wanted me to sign . . . . This did not create any obligations prior to a dissolution of the marriage. . . . [T]hat was the understanding that both David and I had when we entered into this." JA 113–14; *see also* JA 124 (Question to Debbie: "Did either you or David execute any documentation to verify and confirm [your waiver] with the administrator of [the] plan?" Debbie's response: "No. . . . He never asked me to. It wasn't the intent of the agreement."). As unfortunate and perhaps as unfair as this outcome seems, the reality remains that Debbie received no more and no less of David's retirement assets than the prenuptial agreement gave her.

*Callahan v. Hutsell, Callahan & Buchino P.S.C. Revised Profit Sharing Plan*, No. 92-5796, 1993 WL 533557 (6th Cir. Dec. 20, 1993), does not change matters. *Callahan*, it is true, did hold that ERISA "could not relieve [a surviving spouse] of her obligation to act in accordance with her contractual undertaking[]" to sign a spousal-consent form. *Id*. at *7. But the prenuptial agreement in *Callahan* differed markedly from this one. It said that Nancye Callahan both waived her interest in Ed Callahan's retirement plans and agreed to execute, "as soon as possible" after the wedding, "a "designation form that Ed presumably intended to give to the plan administrator . . . in order to renew his designation of [his estate] as beneficiary under [his retirement] plans." *Id.* at *1. As part

of the agreement, Nancye also "acknowledged that she would not be entitled to a death benefit under the plans." *Id.* at *2. Here, in contrast, the agreement provided that, if David and Debbie were married at the time of David's death, Debbie would receive David's retirement assets. Because the agreement here also required Debbie to "execute and provide any instruments or documents *at any time requested by the other party* that [were] necessary or proper to effectuate the [agreement's] purposes and goals," JA 33 (emphasis added), and because "no party argues that Debbie Sandler was ever asked to sign any [spousal-consent form], . . . the issue of breach for failure to consent to a designated beneficiary does not arise," *Greenebaum*, 458 F. Supp. 2d at 423 n.3.

The *Callahan* agreement also designated a specific beneficiary, Ed's estate, and gave Ed the authority to "designate any beneficiary he desired." *Callahan*, 1993 WL 533557, at *1. Here, however, the agreement contained no similar grant of authority or designation of a third-party beneficiary. To the contrary, the agreement named Debbie as the beneficiary in the event of David's death and permitted Debbie to name someone other than the children as the beneficiary without violating the agreement. *Cf. Hagwood*, 282 F.3d at 291 (explaining that ERISA's spousal-consent requirements not only "ensure voluntariness" but also "give[] the surviving spouse control over who would receive the benefits in lieu of the surviving spouse"). Thus, even if the estate in *Callahan* had a tenable claim of breach and a tenable claim of harm from the breach, the children here have no such claim.

B.

As for Debbie Sandler's motion for attorney fees, it appears that it got lost in the mix of motions and cross-motions. The district court's opinion makes no mention of the motion for attorney fees but instead concludes by saying that "all other motions are moot." *Greenebaum*, 458 F. Supp. 2d at 423 (emphasis omitted). From all that the record shows, we can see no reason why this motion would have been moot. Although "[t]here may well be convincing reasons for denying the motion for costs," *Bridgeport Music, Inc. v. Universal-MCA Music Publ'g, Inc.*, 481 F.3d 926, 930 (6th Cir. 2007) (internal quotation marks omitted); *see also First Trust Corp. v. Bryant*, 410 F.3d 842, 851 (6th Cir. 2005) (discussing the "five-factor test [utilized] in assessing whether the district court properly exercised its discretion in awarding [attorneys'] fees"), we "cannot know for sure" until and "unless such grounds are made explicit," *Bridgeport*, 481 F.3d at 930 (internal quotation marks omitted). "[T]he court's silence," in short, "prohibits us from examining the soundness of its discretionary judgment" on the motion for fees, *id.* (internal quotation marks omitted), and accordingly we ask the district court to consider the motion in the first instance.

III.

For these reasons, we affirm in part, reverse in part and remand the case to the district court to consider Debbie's request for attorney fees.